# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JARROD B. FOSTER,

        Plaintiff,

v.                                                                                  No. CV 15-1047 CG/LAM

NOVA HARDBANDING, LLC, et al.

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Plaintiff's Opposed Motion and Supporting Brief to Conditionally Certify FLSA Collective Action and Authorize Notice* (the "Motion"), (Doc. 35), filed February 18, 2016; *Defendant Nova Hardbanding, LLC's Brief in Opposition to Plaintiff's Motion and Brief to Conditionally Certify FLSA Collective Action and Authorize Notice* (the "Response"), (Doc. 39), filed March 3, 2016; and *Plaintiff's Reply to Defendants' Response to Plaintiff's Motion to Conditionally Certify FLSA Collective Action and Authorize Notice* (the "Reply"), (Doc. 44), filed March 28, 2016.

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Because Plaintiff and the class members are similarly situated, as they held similar positions and were subject to a common decision, policy, or plan, the Court finds that the Motion should be **GRANTED IN PART** and **DENIED IN PART**.

    I.      **Procedural Background**

Defendant Nova Hardbanding, LLC ("Defendant Nova") is a drill pipe inspection company. (Doc. 35-1 ¶ 3). Plaintiff worked for Defendant Nova from July 15, 2013 to

June 30, 2014 and November 3, 2014 to April 13, 2015.[1] (Doc. 40 A-5, 1 at 15). During these periods, Plaintiff worked as a Hard Band Helper, Inspection Helper, Inspection Operator, Inspector, and an Inspection Supervisor at job sites in New Mexico and Texas.[2] (Doc 35-1 ¶ 3; Doc. 40 A-5, 4 at 15; A-5, 5 at 15 & 17, A-5, 7 at 6). Plaintiff's *First Amended Complaint* ("Complaint") alleges that Defendant Nova failed to pay overtime to its employees who worked over 40 hours per week in violation of the Fair Labor Standards Act ("FLSA"). (Doc. 20 ¶ 16). Additionally, the Complaint alleges that "Defendant[ ] [Nova's] management directed and/or was aware of employees not being properly compensated for all hours worked and therefore willfully violated the FLSA." (Doc. 20 ¶ 17).

In support of these allegations, Plaintiff provided a Declaration. (Doc. 35-1). Plaintiff states that although he regularly worked over 40 hours per week, he received a salary, but did not receive overtime pay. (Doc. 35-1 ¶ 8). During his employment with Defendant Nova, Plaintiff "cleaned, inspected, tested and measured pipe and tubing and operated an imager at work sites throughout New Mexico and Texas." (Doc. 35-1 ¶ 7). All inspectors had the same basic duties. (*Id.*). Based on Plaintiff's observations and conversations with fellow inspectors and management, Plaintiff contends that all inspectors were put on a "fixed/flat salary" and were not paid overtime. (Doc. 35-1 ¶ 8). Plaintiff states that a group text with managers resulted in "management's response to

---

[1] These dates are taken from Plaintiff's employment records provided by Defendant Nova. In his Declaration, Plaintiff stated that he worked for Defendant Nova from July 2013 to July 2014 and October 2014 to April 2015. (Doc. 35-1 at 1). The Court will use the dates supplied by Defendant Nova because Defendant Nova had the actual record of employment.

[2] These job titles are taken from the official paperwork that Defendant Nova completed in Plaintiff's employment records. (Doc. 40 A-5, 4 at 15; A-5, 5 at 15 & 17, A-5, 7 at 6). Plaintiff stated in the Complaint and his Declaration that his job titles included "Drill Pipe Hand" and "Drill Pipe Operator/Inspector." (*See* Doc. 35 and 35-1 ¶ 3).

said text stating that anyone who didn't like not getting overtime pay, could go flip burgers at McDonalds." (*Id.*).

Along with the Plaintiff, twelve opt-in plaintiffs (the "opt-in plaintiffs") have filed their Notices of Consent to join the action. (*See* Docs. 4, 5, 6, 7, 8, 9, 10, 13, 14, 32, 33, 36). In addition to Plaintiff's employment record, Defendant Nova provided the employment records for four of the opt-in plaintiffs, Christopher Bell, Mateo Quinones, Robert Wilkins, and Larry Wilson, Jr. (Doc. 40 A-2, A-3, A-4, A-6). Christopher Bell was classified as an Inspection Operator when he was hired in August 2014. (Doc. 40 A-2, 2 at 17). Mateo Quinones was labeled an Inspection Helper when he was rehired by Defendant Nova in June 2015, as was Robert Wilkins when he was hired in November 2013. (Doc. 40 A-3, 6 at 14; A-4, 3 at 9). Although in his Declaration, Gary Jordan, Defendant Nova's Division Manager, Directors of Sales, New Product Service Manager, and ISO 9001 Representative Manager, states that Larry Wilson, Jr. was a driver for Defendant Nova, (Doc. 40 A ¶ 6), Mr. Wilson was classified as an Inspection Helper in December 2013, according to his employment record. (Doc. 40 A-6, 7 at 11).

Based on the allegations in the Complaint and the supporting evidence, Plaintiff filed this motion to conditionally certify a class under 29 U.S.C.A. § 216(b) of the FLSA. (Doc. 35). The proposed class consists of "all persons who were, are, or will be employed by Defendant[ ] [Nova] as non-exempt salaried employees who have not been compensated by the overtime premium rate for all hours worked in excess of 40 hours per week." (Doc. 20 ¶ 13). Defendant Nova responds that Plaintiff has not met the conditional certification standard. (Doc. 39).

3

## II. Standard of Review

The FLSA allows "similarly situated" employees to collectively challenge alleged FLSA violations. 29 U.S.C.A. § 216(b). Employees must opt-in to a collective action by giving consent in writing and filing the consent with the Court. *Id.* The FLSA does not define "similarly situated;" however, courts in the Tenth Circuit have adopted an *ad hoc* approach in which they determine on a case-by case basis whether members of a class are similarly situated. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102-03, 1105 (10th Cir. 2001). With this approach, the court utilizes a two-step process. First, at an initial "notice stage," the court determines whether Plaintiffs are "similarly situated," which "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Thiessen*, 267 F.2d at 1102 (internal quotations omitted) (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). The purpose of this first step is for the court to determine whether the certification is appropriate for the purpose of sending notices and consent forms to potential plaintiffs. *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007) (citing *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004)).

Once the court has conditionally certified a class, the parties engage in discovery. After the close of discovery, the court moves to the second step using a "stricter standard of 'similarly situated,'" which requires the evaluation of different factors. *Thiessen*, 267 F.3d at 1102-03 (*quoting Vaszlavik*, 175 F.R.D. at 678). These factors include: (1) the different factual and employment settings of individual plaintiffs;

(2) the various defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Renfro*, 243 F.R.D. at 432.

In this case, Plaintiff seeks conditional certification of his proposed collective action class. (Doc. 35). "The standard of certification at the present stage is a lenient one that typically results in class certification." *Greenstein v. Meredith Corp.*, 948 F. Supp. 2d 1266, 1267 (D. Kan. 2013) (citing *Brown*, 222 F.R.D. at 679). Indeed, "[t]he court does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." *Id.* (citing *Gieseke v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1164-1166-67 (D. Kan. 2006)). In general, if putative class members are employees with similar positions, allegations that the defendants "engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan." *Renfro*, 243 F.R.D. at 433-34 (citing *Brown*, 222 F.R.D. at 681). Thus, for this Motion, the Court will determine whether class members are similarly situated by looking at whether (1) the proposed class includes employees with similar positions and (2) defendants had a single decision, policy, or plan to not pay class members overtime.

### III. Analysis

#### a. Similar Positions

First, the Court will determine whether Plaintiff and potential class members had similar positions. Plaintiff asks the Court to conditionally certify a class with members including "all of Defendants' Drill Pipe Hands and Drill Pipe Operator/Inspectors . . .," because they had similar job duties and were subject to the "same illegal fixed salary pay policy." (Doc. 35 at 2). Defendant Nova argues that since Plaintiff's employment

5

records do not contain a record that he worked as a "Drill Pipe Hand" or a "Drill Pipe Operator/Inspector," and Defendant Nova does not have jobs with these titles in their published job descriptions, no other employee could have worked for Defendant Nova under these job titles. Thus, no other employee could be "similarly situated" with the Plaintiff. (Doc. 39 at 5). In his Reply, Plaintiff acknowledges that he did not know the specific job titles that Defendant used to classify its employees, but wanted to represent a class of Inspectors and Operators. (Doc. 44 at 3 n.3).

In determining whether the class members had similar positions, the Court will first look at Defendant Nova's argument regarding job titles. Defendant Nova submitted both employee records for five employees, including Plaintiff and four opt-in plaintiffs, as well as a formal job description document. (Doc. 40 A-2, A-3, A-4, A-5, A-6). The job descriptions list included positions entitled Assistant-Inspection Helper, Level I / "Helper in Training" Inspector, Level II Inspector, and Level III Inspector. (Doc. 40 A-1). However, in the official employment paperwork, Plaintiff was labeled as an Inspection Helper, Inspection Operator, Inspector, and an Inspection Supervisor. (Doc. 40 A-5, 5 at 15 & 17, A-5, 7 at 6). Christopher Bell held the title of Inspection Operator according to his employment paperwork, (Doc. 40 A-2, 2 at 17), and Mateo Quinones, Robert Wilkens, and Larry Wilson, Jr. were all categorized as Inspection Helpers in their employment paperwork. (Doc. 40 A-3, 6 at 14; A-4, 3 at 9; A-6, 7 at 11). Additionally, in his declaration, Mr. Jordan explains that "[s]ometimes in the field and on the yard, employees who are 'helpers' are referred to as 'hands,' and 'inspectors' are sometimes called 'operators.'" (Doc. 40 A ¶ 5). Given that neither Defendant Nova nor its employees appear to use the official job titles from the job descriptions document, the

6

Court does not agree with Defendant Nova that no other employee could have been "similarly situated" with Plaintiff. Therefore, the Court will look to substantive duties of the Plaintiff and opt-in plaintiff's as demonstrated in the evidence provided by both Parties to determine whether they are similarly situated.

Plaintiff states that his job responsibilities included, "clean[ing], inspect[ing], test[ing], and measure[ing] pipe and tubing and operat[ing] an imager at work sites . . . ." (Doc. 35-1 ¶7). Plaintiff's description of his job duties matches the duties from the job description document provided by Defendant Nova. According to the job description document, Assistant-Inspection Helpers work as inspection helpers at the job site and clean and inspect drill pipes, among other duties. (Doc. 40 A-1 at 5). Level I, Level II, and Level III inspectors have primarily the same job descriptions, with a greater supervisory role in each level. (*Id.* at 7-8). Each Inspector has the general duties of inspecting drill pipes and managing helpers. (*Id.*). Although there may be some variation in the duties of each job, it is sufficient for conditional certification if class members have similar positions. *Greenstein*, 948 F. Supp. At 1269 (*See Renfro*, 243 F.R.D. at 434 (conditionally certifying a class of field technicians and installers with different job titles); *Pivonka v. Bd. of County Comm'rs of Johnson County, Kan.*, No. 04-2598-JWL, 2005 WL 1799208, at *4 (D. Kan. July 27, 2005) (variations in responsibilities of class members was not fatal to initial class certification where all individuals share general duties and defendant denied overtime to all)). The Court concludes that the allegations and evidence are sufficient to show that the individual employees had similar job duties and were similarly situated to Plaintiff.

### b. Single Decision, Policy, or Plan

The Court will next look at whether Defendant Nova made a single decision, policy, or plan to exclude class members from receiving overtime pay. Plaintiff argues that Inspectors "performed identical work under an identical pay scheme, and after they were hired as employees, they were misclassified as exempt and/or simply not paid overtime . . . ." (Doc. 35 at 11). These allegations are based on Plaintiff's observations and conversations with fellow Inspectors, as well as conversations with Defendant Nova's management. (Doc. 35-1 ¶¶ 7-9). Defendant Nova does not reply to these allegations, instead, Defendant Nova argues that Plaintiff was exempt from FLSA overtime requirements. (Doc. 39 at 3-4).

Specifically, Mr. Jordan states in his Declaration that

> [i]ndividuals with the job title 'Inspector' . . . are compensated on a salary basis at a rate not less than $455 per week, customarily and regularly direct the work of at least two or more other full-time employees or their equivalent; and have the authority to hire or fire other employees, or the employees' suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees is given particular weight.

(Doc. 40 A ¶ 4). In its Response, Defendant Nova explains that this type of employee qualifies as an employee that is exempt from overtime pay under FLSA. (Doc. 39 at 4). Therefore, based on the information Defendant Nova provided explaining that Inspectors are classified as exempt employees, the Court finds that the evidence presented is enough to show that the putative class members were classified as exempt under a common decision, policy, or plan. *Koehler v. Freightquote.com, Inc.*, 93 F. Supp. 3d 1257, 1263 (D. Kan. 2015).

### c. Class Definition

The Plaintiff asks the Court to certify a class defined as "those current and former employees of Defendants who are similarly situated to Plaintiff; i.e., those who were not paid their regular or statutorily required overtime rate of pay for all hours worked." (Doc. 1 ¶ 9). In his Reply, Plaintiff defines these employees as Inspectors and Operators. (Doc. 44 at 3 n. 3). Given that Defendant and Plaintiff use different terms to describe the same jobs, the Court will decline to adopt this definition in order to define the class more precisely. The Court will certify a class of current and former employees who worked for Defendant Nova over 40 hours per week as an Inspection Helper, Inspection Operator, Inspector, or an Inspection Supervisor for the past three years, from the date of the Court's order to the present.[3]

### d. Defendant's Arguments are Premature

Defendant Nova makes several arguments that are premature at this stage of the litigation. Defendant Nova argues: (1) Plaintiff and several opt-in plaintiffs were exempt from overtime pay under the FLSA; (2) the claims "require individualized factual inquiries for ultimate resolution;" and (3) "certification is unnecessary and impractical." (Doc. 39). Plaintiff states that these arguments go to the merits of the claims, which is not appropriate at this stage in the litigation. (Doc. 44).

As stated above, at the conditional certification stage, "the court does not weigh the evidence, resolve factual disputes, or rule on the merits of plaintiffs' claims." *Greenstein*, 948 F. Supp. 2d at 1267 (citing *Gieseke*, 408 F. Supp. 2d at 1167-67).

---

[3] Plaintiff alleges that Defendant Nova's conduct was willful, invoking a three year statute of limitations. (Doc. 1 ¶ 3); *French v. Midwest Health, Inc.*, No. 2:14-CV-2625-JAR-KMH, 2015 WL 4066748, at *5 (D. Kan. July 2, 2015) (citing 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 132, 135 (1988) (applying a three year statute of limitations to willful violations of the FLSA); *Renfro*, 243 F.R.D. at 435 n.5). As a result, the Court will use a three year statute of limitations in this case.

Rather, the Court must "consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Renfro*, 243 F.R.D. at 434 (citing *Thiessen*, 267 F.3d at 1102). "Indeed, '[w]hether the positions the Plaintiff held were exempt is not an issue when deciding whether to authorize notice in an FLSA action.'" *Fortna v. QC Holdings, Inc.*, No. 06-CV-0016-CVE-PJC, 2006 WL 2385303, at *7 (N.D. Okla. Aug. 17, 2006) (unplublished) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003)). Further, although Defendant Nova argues that opt-in plaintiffs would require individualized inquiries into each employment situation, "[i]t is well established that individual questions with respect to damages will not defeat class certification . . . ." *Brown*, 222 F.R.D. at 682 (quoting *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (internal quotations omitted). Questions of management issues are for the second stage analysis after discovery. *Gieseke*, 408 F. Supp. 2d at 1168.

Finally, Defendant Nova argues that Plaintiff "has presented no evidence that court-approved notice is necessary, nor would it serve the best interests of the Court or the parties." (Doc. 39 at 7). In support, Defendant Nova relies on a case from the Court of Federal Claims, *Briggs v. United States*, 54 Fed. Cl. 205, 207 (2002). However, in *Briggs*, the Court acknowledges the Tenth Circuit's approach, but applies its own discretionary standard because the Court of Federal Claims is not bound by Tenth Circuit case law. *McCaffrey v. Mortgage Sources, Corp.*, No. CIV. A. 08-2660-KHV, 2009 WL 2778085, at *4 (D. Kan. Aug. 27, 2009) (unpublished). This Court is bound by Tenth Circuit case law and as a result will use the two-step approach that the Tenth Circuit has approved. Under the Tenth Circuit approach, Plaintiff has met his burden to

present substantial allegations that all members of the putative class were subject to a single decision, policy, or plan. *Thiessen*, 267 F.3d at 1102.

**IV.     Notice**

In addition to conditionally certifying the class, the Plaintiff asks the Court to: (1) require defendants to produce in a computer readable format, the names, all addresses, all telephone numbers, dates of birth, all email addresses, driver's license numbers, social security numbers, and dates of employment for all class members (the "Class List") within ten days of the granting of conditional certification; (2) authorize the mailing of the Notice and Consent Forms to class members via regular mail and email within seven days of receiving the class list; (3) allow Plaintiffs to hire a third-party class action administration company, if they deem it appropriate; (4) allow class members to execute consents electronically via Right Signature; (5) approve that notice be sent twice to the putative class members; and (6) prohibit Defendants from contacting or discussing the lawsuit with potential opt-in plaintiffs . Defendant Nova did not object to any of these requests.

   *a. Notice and Consent Forms*

The Supreme Court has left the contents of proposed notices to the broad discretion of the trial court. *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101 (S.D.N.Y. 2003) (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989)). Although the Court has the "power and duty to ensure that the notice is fair and accurate, [ ] it should not alter plaintiff's proposed notice unless such alteration is necessary." *Creten-Miller v. Westlake Hardware, Inc.*, No. CIV.A. 08-2351-KHV, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009) (unpublished) (citing *Lewis v. ASAP Land*

11

*Exp., Inc.*, No. 07-CV-2226-KHV, 2008 WL 2152049, at *2 (D. Kan. May 21, 2008) (unpublished)). The Court has reviewed Plaintiff's proposed notice and consent forms and finds that they give a fair and impartial explanation of the case and the options available to the class members. *McCaffrey*, 2009 WL 2778085, at *4. The Court approves Plaintiff's proposed notice and consent to join as attached to the Motion, (Doc. 35), including the 90 day opt-in period, with the following exceptions:

>  **Notice Form:**
> 
> 1. All mention of "Drill Pipe Hands" and "Drill Pipe Operators/Inspectors" shall be changed to "Inspection Helper, Inspection Operator, Inspector, or Inspection Supervisor"
> 
> 2. Under Deadline to Join, insert: FROM: [Plaintiff or Plaintiff's Attorney]
> 
> 3. Change the wording in "Why are You Getting this Notice?," to:
>    Introduction: The purpose of this Notice is to inform you of the existence of a collective action lawsuit in which you are potentially "similarly situated" to the named Plaintiff, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit.
> 
> 4. Change the wording in "What is this Lawsuit About?," to:
>    Description of the Lawsuit: The lawsuit at issue was filed on November 16, 2016, against the Defendants, Nova Hardbanding, LLC and Kenneth Bromley, in the United States District Court for the District of New Mexico. The Plaintiff alleges that the Defendants violated the Federal Fair Labor Standards Act by not paying eligible employees time and one-half, or overtime compensation, for all hours worked in excess of 40 hours in a week. The lawsuit is seeking back pay and double liquidated damages from the Defendants, as well as costs and attorney's fees to compensate such eligible employees. The Defendants deny the Plaintiff's allegations, and deny that they are liable to the Plaintiff for any of the back pay, damages, costs or attorney's fees sought.
> 
> 5. Change the wording in "What are Your Options?," to:
>    If you return a signed Consent to Join form, you become a part of the case. You will be bound by the result in the case, whether it is good or bad. You may share in any money recovered in the case. If nothing is recovered in the case, you will get nothing and courts costs (but not attorney's fee) may possibly be assessed against you.

> If you return a signed Consent to Join form, the following lawyer will represent you: (Add information)
>
> You will not have to pay this lawyer directly – win or lose. Instead, the lawyer will be paid by Defendants or from the amount, if any, recovered by settlement or awarded by the Court.
>
> Leave in the paragraph regarding not joining the lawsuit.

6. Under paragraph "How Can You Get More Information?," add the following paragraph:
   > Further information about this Notice, the deadline for filing a "Consent to Become a Party Plaintiff, or questions concerning this lawsuit may be obtained by writing or telephoning the Plaintiff's counsel at the telephone number and address listed below: [Add Information]

7. Delete "This is a Court Approved Notice," and insert in all caps and bold:
   > **THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE FEDERAL DISTICT COURT FOR THE DISTRICT OF NEW MEXICO, THE HONORABLE JUDGE CARMEN E. GARZA, UNITED STATES MAGISTRATE JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFF'S CLAIMS OR OF THE DEFENDANTS' DEFENSES.**

**Consent to Join Form:**

1. Add to numbered paragraph 2:
   > I also voluntarily consent to have United States Magistrate Judge Carmen E. Garza conduct any and all further proceedings in the case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.

   b. *Class List*

The Court grants Plaintiff's request for a class list with the names, all addresses, all telephone numbers, all email addresses, and dates of employment. Defendants must provide this information in a computer readable format by May 6, 2016. However, the Court denies Plaintiff's request for dates of birth, driver's license numbers, and social security numbers. When courts address these types of requests, they apply a balancing test that weighs the Plaintiff's "need for [the information] against the putative class

members' privacy interests." *Koehler*, 93 F. Supp. 3d 1257, 1265-66 (D. Kan. 2015) (citing *Allen, et al v. Mill-Tel, Inc.*, No. 11-1143-EFM-KGS, 2012 WL 2872160, at *8 (D. Kan. July 12, 2012) (unpublished)). The privacy interests of the putative class members outweighs the interest of Plaintiff for the additional information at this time; however, if Plaintiff is unable to locate class members without this information, they may file a motion with the Court to include this information. *Id.*

### c. Distribution of Forms

Plaintiff may mail the notice and consent forms by first class mail and by electronic mail within seven days of receiving the class list to current and former employees who worked as an Inspection Helper, Inspection Operator, Inspector, or an Inspection Supervisor for the past three years. Defendant Nova has not objected and the Court sees no reason why the Plaintiff should not be permitted to hire a third party class action administration company to oversee the mailing of the forms.

### d. Electronic Signature

Class members may execute their consents forms online or through an electronic signature. Congress passed the Electronic Signatures in Global and National Commerce Act in 2000, which states that "with respect to any transaction in or affecting interstate or foreign commerce [a] signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form." *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W.D. Tex. 2015) (quoting 15 U.S.C. § 7001(a)(1)). Under New Mexico law, a signature cannot be denied legal effect or enforceability solely because it is in electronic form. *See* N.M. Stat. § 14-16-7 (2006). Additionally, we will follow the lead of other courts as "we live in

a time when all manner of commercial transactions are routinely cemented by electronic submission." *Dyson*, 308 F.R.D. at 517-18 (quoting *Mraz v. Aetna Life Ins. Co.*, No. 3:12-CV-805, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014) (unpublished)); *See White v. Integrated Elec. Tech., Inc.*, Civil Action Nos. 11-2186, 12-359, 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (unpublished) (approving the use of electronic consent forms for class members, noting other "courts have also approved the use of online, electronic signature opt-in forms," and citing cases).

### e. Reminder Notices

Plaintiffs would like to send notices to putative class members twice. (Doc. 35 at 14). Courts are divided on the appropriateness of sending reminder letters. *Saenz v. Rod's Production Services, LLC et al*, No. 2:14-cv-00525 RB-GBW, at *4 (D.N.M. March 6, 2015) (unpublished) (collecting cases). In this case, putative class members will be receiving communication through both the mail and electronic mail. At this time, the Court finds that the extra notice is not necessary. If at the end of the opt-in period, the Plaintiff feels that the one notice was insufficient, Plaintiff may file a motion with the Court to send an additional notice.

### f. Retaliation Clause

Plaintiff asks that Defendant Nova and Defendant Kenneth Bromley (together, the "Defendants") be prohibited from communicating both directly or indirectly with any current or former employees about the case during the opt-in period. (Doc. 35 at 14). Defendant Nova did not respond to this request.

"If a court issues 'an order limiting communications between parties and potential class members[, it] should be based on a clear record and specific findings that reflect a

weighing of the need for a limitation and the potential interference with the rights of the parties.'" *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1105 (D.Colo. 2013) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981)). Generally, after a conditional certification is granted, communication with putative class members is not prohibited "where a party has not engaged in misleading, coercive, or otherwise abusive communications." *Id.* (quoting *Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1227 (S.D.Ala. 2008)).

In order to make such findings, the Court must look at the evidence of actual or threatened abuse. *Id.* In cases where it is found that communications "mislead[ ] class members, misrepresent[ ] the status or effect of the pending action, coerce prospective class members into excluding themselves from the litigation, or undermine cooperation with or confidence in class counsel," courts have issued restrictive orders. *Id.* (internal quotations omitted) (quoting *Bass v. Pjcomn Acquisition Corp.*, Civil Action No. 09-CV-01614-REH-MEH, 2011 WL 902022, at *4 (D. Colo. Mar. 14, 2011) (unpublished)).

In this case, Plaintiff alleges that Defendants have contacted opt-in plaintiffs and encouraged them to settle their cases. (Doc. 35. at 2; 14). The Defendants do not respond to this allegation. At this time, the Court only has allegations from the Plaintiff that this communication has occurred. The Plaintiff did not submit proof through emails, affidavits, or declarations that any inappropriate communication occurred between Defendants and opt-in plaintiffs. Given that the Court does not have "a clear record and specific findings[,]" and "there is no prohibition against pre-opt in communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice," the Court will not restrict Defendants from communicating with opt-in

plaintiffs at this time. The Court will; however, caution Defendants that any type of communication with opt-in plaintiffs that is misleading, misrepresentative, or coercive will result in remedial measures.

V.     **Conclusion**

Plaintiffs have sufficiently alleged that the putative class members are similarly situated Inspection Helpers, Inspection Operators, Inspectors, and Inspection Supervisors employed with Defendant Nova for the past three years.

Accordingly, **IT IS THEREFORE ORDERED** that *Plaintiff's Opposed Motion and Supporting Brief to Conditionally Certify FLSA Collective Action and Authorize Notice*, (Doc. 35), be **GRANTED IN PART** and **DENIED IN PART** consistent with the above Opinion.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE